IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

**MATTHEW C. BROWN,**           Case No.: 09-CA-020437 Division F

       Plaintiff,

v.

**KB HOME TAMPA LLC,
KB HOME SALES – ORLANDO LLC,
KB HOME TREASURE COAST LLC,
KB HOMES SOUTH FL, L.L.C., and
KB HOME TITLE SERVICES INC.,**

       Defendants.
_____/



## AMENDED COMPLAINT

COMES NOW, Plaintiff, MATTHEW C. BROWN, hereinafter ("BROWN"), by and through his undersigned counsel and sues the Defendants, KB HOME TAMPA LLC, hereinafter ("KB TAMPA"), KB HOME SALES – ORLANDO LLC, hereinafter ("KB ORLANDO"), KB HOME TREASURE COAST LLC, hereinafter ("KB TREASURE"), KB HOMES SOUTH FL, L.L.C., hereinafter ("KB SOUTH FL") and KB HOME TITLE SERVICES INC., hereinafter ("KB TITLE") and states as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

2. Venue lies within Hillsborough County because a substantial part of the events giving rise to this claim arose in this Judicial District.

### PARTIES

3. Defendant, KB TAMPA, is a Florida Limited Liability Company, authorized and doing business in this Judicial District.

1

4. Defendant, KB ORLANDO, is a Foreign Limited Liability Company, authorized and doing business in this Judicial District.

5. Defendant, KB TREASURE, is a Foreign Limited Liability Company, authorized and doing business in this Judicial District.

6. Defendant, KB SOUTH FL, is a Florida Limited Liability Company, authorized and doing business in this Judicial District.

7. Defendant, KB TITLE, is a Florida Profit Corporation, authorized and doing business in this Judicial District.

8. Plaintiff, BROWN, resides in North Port, Sarasota County, Florida.

## FACTUAL ALLEGATIONS

9. On or about May 2005, Plaintiff, BROWN, was hired by Defendants as a Regional Construction Manager in the Fort Myers, Florida division. On or about 2007, Plaintiff's title was changed to Senior Project Manager.

10. On or about June 2007, Plaintiff discovered a deficiency in the structure of the Willow Brook Condominiums. Plaintiff raised his concerns to Defendants' Director of Operations and Division President. The Division President instructed Plaintiff not to e-mail him regarding his concerns.

11. When Plaintiff objected to Defendants closing on any of the afflicted homes until the problem was corrected, he was called "chicken little."

12. On or about August 2008, Plaintiff was relocated to Defendants' Sarasota, Florida office. During this time, Plaintiff's title was changed to Superintendant.

13. On or about December 2008, following an article published in a local newspaper on the topic of "Chinese Drywall," Plaintiff contacted Regional Construction Manager, Tom Schramski, and Senior Customer Service Representative, Mike Lionas in order to make them aware of the issue.

2

Mr. Brown shared his knowledge regarding "Chinese Drywall" and urged Defendants to look into the issue and take a proactive approach.

14. On or about January 2009, Plaintiff was contacted by a home builder requesting information as to whether Defendants used "Chinese Drywall." Mr. Brown immediately contacted Defendants' Regional Counsel's office requesting guidance.

15. On or about January 15, 2009, Plaintiff was told by the legal assistant to Florida Regional Counsel, John Dekle, to "hold off" on contacting the homeowner regarding "Chinese Drywall" until Mr. Dekle received "guidance" from corporate.

16. On or about January 2009, following the correspondence with Defendants' Regional Counsel, Plaintiff, along with others, received an email instructing that all "Chinese Drywall" inquiries were to be directed to Senior Vice President, Darren DuPree. Defendants' media policy was also attached to the email.

17. On or about late January 2009, at a weekly customer service meeting in Tampa, Florida, Director of Purchasing, Chad Burlingame, in discussing what Defendants' approach would be regarding "Chinese Drywall," stated to Plaintiff and others that the position the company would take was "plausible deniability."

18. On or about late January 2009 or early February 2009, Mr. Schramski instructed Plaintiff to put everything he knew about "Chinese Drywall" in an email and send it to him and Mr. DuPree.

19. On or about February 9, 2009, Plaintiff notified Darren DuPree, Tom Schramski, and Mike Lionas of his concerns regarding "Chinese Drywall." Mr. Brown noted that Defendants would have to remove the entire wall board from a home in order to determine whether it had "Chinese Drywall" as opposed to looking at the ceiling board. Furthermore, Plaintiff identified numerous units belonging to Defendants which were at risk of containing "Chinese Drywall."

20. On or about February 9, 2009, Plaintiff submitted to Mr. DuPree, Mr. Schramski, and Mr. Lionas a preliminary proposed action plan to remedy any potential impact that "Chinese Drywall" had on Defendants' units. Mr. Brown's proposed action plan included, among other things: (1) written correspondence, prepared by Defendants' legal team, with homeowners potentially affected by "Chinese Drywall," sorted by priority, followed by a telephone call by Plaintiff and another employee; (2) evaluations and inspections to determine whether a particular home was affected; and (3) repair of the home, which included temporarily moving the homeowner.

21. On or about February 9, 2009, Plaintiff forwarded Mr. DuPree, Mr. Schramski, and Mr. Lionas a list of homes potentially affected by "Chinese Drywall."

22. Approximately one week after the February 9, 2009 correspondence, Plaintiff was told by Mr. Lionas to cease any further written correspondence regarding the "Chinese Drywall" issue.

23. On or about late February 2009, at a quarterly meeting, Mr. DuPree pulled Plaintiff and a co-worker to the side and reiterated, reiterating that they should have no written correspondence regarding "Chinese Drywall." Plaintiff was told that Defendants were not sure how to handle the "Chinese Drywall" situation, but that it was a big problem and they would have plenty of work to do regarding it.

24. Following Plaintiff's February 9, 2009 correspondence, his supervisors refused to discuss "Chinese Drywall" issues with him and would not allow Plaintiff to be involved in inspection, evaluation, or remediation of the "Chinese Drywall" issue.

25. Following Plaintiff's February 9, 2009 correspondence, Defendants enlisted another employee to drive approximately one-hundred (100) miles, round trip, to look at a home where a homeowner complained that they might have "Chinese Drywall." Plaintiff resided approximately two and one-half (2 ½) miles from the homeowner.

26. On or about April 3, 2009, Plaintiff, MATTHEW C. BROWN, was notified by Darren DuPree that his position was eliminated due to a reduction of the workforce.

27. Plaintiff was replaced by an employee of Defendants.

## COUNT I
### (Florida Private Whistleblower's Act)

28. Plaintiff realleges and adopts paragraphs one (1) through twenty-seven (27), as if set out in full hereafter.

29. This is an action for damages pursuant to Florida's Private Whistleblower's Act, *Fla. Stat.* § 448.101 *et seq*.

30. The retaliatory actions described above were conducted by Defendants, through its agents or employees, in part or in total because Plaintiff, BROWN, objected to or refused to participate in the activities, policies, and practices described above which Plaintiff had a reasonable belief were and/or in fact were in violation of various laws, rules and regulations. Specifically, Plaintiff objected to, or refused to participate in, violations of, including but not limited to: (a) Section 553, Florida Statutes; (b) Florida Building Code; (c) Sections 103.5 and 23-37, Sarasota County Code of Ordinances; (d) Section 6, Hillsborough County Code of Ordinances; and (e) Florida's Deceptive and Unfair Trade Practices Act.

31. As a result of the retaliatory actions of Defendants, Plaintiff, BROWN, has suffered damages including lost wages, benefits, and other remuneration, emotional distress, and humiliation. These losses are permanent or intermittent and will continue into the future.

32. As a result of Defendants' unlawful acts against Plaintiff, BROWN, he has and will continue to incur attorneys' fees which are recoverable under Section 448.104, Florida Statutes.

WHEREFORE, Plaintiff, MATTHEW C. BROWN, demands judgment against Defendants, and prays for the following relief:

a.  Injunction to restrain continued violations of the Act;

b.  Reinstatement to the same or an equivalent position;

c.  Reinstatement of fringe benefits and seniority rights;

d.  Lost wages;

e.  Lost benefits;

f.  Other remuneration;

g.  Attorneys fees and costs; and

h.  Any other compensatory damages allowable at law including pain and suffering, mental anguish, emotional distress, loss of reputation, loss of credit standing and embarrassment.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues so triable, with respect to the terms and conditions of his employment.

DATED this 14 day of August 2009 in Palm Harbor, Pinellas County, Florida.

**FLORIN ROEBIG, P.A.**

**WOLFGANG M. FLORIN**
Florida Bar No.: 907804
**GREGORY A. OWENS**
Florida Bar No.: 0051366
777 Alderman Road
Palm Harbor, Florida 34683
Telephone: (727) 786-5000
Facsimile: (727) 772-9833
Attorneys for Plaintiff